No. 85–295. COUNTY OF LOS ANGELES ET AL. *v.* KLING. C. A. 9th Cir. Certiorari granted and judgment reversed. *Anderson* v. *Bessemer City*, 470 U. S. 564 (1985).

JUSTICE MARSHALL dissents from this summary disposition, which has been ordered without affording the parties prior notice or an opportunity to file briefs on the merits. See *Maggio* v. *Fulford,* 462 U. S. 111, 120–121 (1983) (MARSHALL, J., dissenting); *Wyrick* v. *Fields,* 459 U. S. 42, 51–52 (1982) (MARSHALL, J., dissenting).

JUSTICE STEVENS, dissenting.

Respondent is afflicted with Crohn's disease. Although originally accepted, her application for admission to the Los Angeles County School of Nursing was ultimately denied, at least in part, because of the school physician's opinion that the school program was "too stressful" for her. Finding of Fact No. 12, App. to Pet. for Cert. D–40. Nevertheless, the District Court concluded that respondent had "failed to show that she was denied admission to the School solely by reason of her affliction or because she had Crohn's disease." Finding of Fact No. 18, App. to Pet. for Cert. D–43. Based on this critical finding, the District Court denied respondent any relief under § 504 of the Rehabilitation Act of 1973, 29 U. S. C. § 794.

The Court of Appeals for the Ninth Circuit reversed. After reviewing the prior history of the case and explaining why it had previously reversed the District Court's order denying respondent's motion for a preliminary injunction, the Court of Appeals wrote:

> "The trial in the district court did not produce substantially different evidence from that which we considered in *Kling I.* The district court's findings are clearly erroneous and in many instances are inconsistent. We find that Mary Kling is an 'otherwise qualified handicapped individual' within the meaning of section 504 of the Rehabilitation Act[1] and that she was denied admission to the School of Nursing solely because of her handicap.[2] The school's physician, Dr. Crary, rejected Kling because she suffers from Crohn's Disease. He assumed that merely because of her disease she would be unable to complete the school's program. He did not evaluate her on an individual basis and even testified that had he known more about Kling's medical history, he would have been 'swayed very strongly toward acceptance.' It is precisely this type of general assumption about a handicapped person's ability that section 504 was designed to avoid. *See*

*Bentivegna* v. *United States Department of Labor*, 694 F. 2d 619 (9th Cir. 1982); *Pushkin* v. *Board of Regents of the University of Colorado*, 658 F. 2d 1372, 1385 (10th Cir. 1981). This district court's legal conclusions are similarly erroneous.

"[1] 29 U. S. C. § 794. *See* 34 CFR § 104.3(j).

"[2] The School of Nursing's claim that Kling was not otherwise qualified because she failed to meet the mathematical entrance requirement is meritless. Because Kling was rejected solely because of her handicap and because this decision was made without regard to her mathematical deficiency and before she had an opportunity to submit evidence that she had or had not remedied the deficiency, it is irrelevant that the deficiency may have existed."

App. to Pet. for Cert. A–6—A–7, and nn. 1, 2.

As this Court's summary disposition today demonstrates, the Court of Appeals would have been well advised to discuss the record in greater depth. One reason it failed to do so is that the members of the panel decided that the issues presented by this case did not warrant discussion in a published opinion that could be "cited to or by the courts of this circuit, save as provided by Rule 21(c)." *Id.*, at A–2, n. **. That decision not to publish the opinion or permit it to be cited—like the decision to promulgate a rule spawning a body of secret law—was plainly wrong.[1]

The brevity of analysis in the Court of Appeals' unpublished, noncitable opinion, however, does not justify the Court's summary reversal.[2] Presumably, the Court's reversal is not based on

---

[1] The proliferation of this secret law has prompted extensive comment. See, *e. g.*, R. Posner, The Federal Courts 120–126 (1985); Wald, The Problem with the Courts: Black-robed Bureaucracy, or Collegiality Under Challenge?, 42 Md. L. Rev. 766, 781–783 (1983); Reynolds & Richman, An Evaluation of Limited Publication in the United States Courts of Appeals: The Price of Reform, 48 U. Chi. L. Rev. 573 (1981); Reynolds & Richman, The Non-Precedential Precedent—Limited Publication and No-Citation Rules in the United States Courts of Appeals, 78 Colum. L. Rev. 1167 (1978); Stevens, Address to the Illinois State Bar Association's Centennial Dinner, 65 Ill. Bar J. 508, 510 (1977). Cf. Grodin, The Depublication Practice of the California Supreme Court, 72 Calif. L. Rev. 514 (1984).

[2] The petition for certiorari submitted the Ninth Circuit's opinion as it was issued, with the footnote explaining that the opinion could not be published or cited. Two days after the petition for certiorari was filed, the Ninth Circuit panel issued an order, as part of the publication of the slip opinion, that "redesignated" the earlier decision as "an authored opinion." See *Kling* v. *County of Los Angeles*, No. 83–6193, Order and Opinion (Aug. 23, 1985). The opinion is now published. See 769 F. 2d 532 (1985).

a view that the Court of Appeals misapprehended the governing standard: as the Ninth Circuit stated, findings of fact by the District Court are reviewable to determine if they are "clearly erroneous." Fed. Rule Civ. Proc. 52(a). Apparently, the Court disagrees with the Ninth Circuit's application of that standard. However, the Court's reversal is not accompanied by a review of the District Court's factual findings or a determination that they are not, in fact, "clearly erroneous." The Court is thus spared the necessity of explaining the apparent inconsistencies in the District Court's findings.[3] The Court is also spared the necessity of addressing the fact that petitioners' own rendition of the incidents in question suggests that the District Court's findings give a less than complete accounting of certain events—events that may well influence a court's view of the matter at hand.[4]

---

[3] Compare Finding of Fact No. 16, App. to Pet. for Cert. D–42 ("Plaintiff has failed to show that she is a person who has a physical or mental impairment which substantially limits one or more of her major life activities, or has a record of such impairment or is regarded as having such an impairment") with Finding of Fact No. 4, App. to Pet. for Cert. D–36 ("Plaintiff at all times herein mentioned suffered from Crohn's disease, an inflamatory [sic] bowel disorder involving the digestive tract which prevents passage and absorption of food and causes in plaintiff unpredictable episodes of nausea, vomiting, fever, headaches, loss of weight and acute abdominal pain among other things and which can require rest, medication, treatment, and hospitalization") and Finding of Fact No. 10, App. to Pet. for Cert. D–39 ("The record reflected that in the ten months preceding Dr. Crary's review, plaintiff had been hospitalized four times for Crohn's disease, although plaintiff only reported three hospitalizations").

Compare also Finding of Fact No. 12, App. to Pet. for Cert. D–40—D–41 (Dr. Crary's "rejection of plaintiff as a candidate for the School on June 11, 1979 was for health reasons, because he believed it was unlikely she could complete the rigorous program and because he believed her health would be endangered if she attempted to complete the program") and Finding of Fact No. 13, App. to Pet. for Cert. D–41 ("Neither the Admissions Committee nor Mary Duncan, Registrar, had the authority to overrule Dr. Crary's medical decision") with Finding of Fact No. 18, App. to Pet. for Cert. D–43 ("Plaintiff has failed to show that she was denied admission to the School solely by reason of her affliction or because she had Crohn's disease").

[4] Compare Finding of Fact No. 7, App. to Pet. for Cert. D–37 ("Plaintiff's application was considered by the Admissions Committee of the School on April 5, 1979. Her acceptance academically by the School was conditional due to her failure to achieve a passing score in mathematics") with Pet. for Cert. 4–5 ("In April, 1979, by mistake, respondent was given a letter unconditionally accepting her application, even though her score on a mathematics

Finally, the Court is spared the necessity of analyzing the District Court's factual findings in the context of the record. The absence of such an analysis is somewhat puzzling. The entirety of the majority's analysis is a reference to *Anderson* v. *Bessemer City*, 470 U. S. 564 (1985). In that case, the Court found it necessary to review the record before it reversed the Court of Appeals' conclusion that the District Court's findings were clearly erroneous. *Id.*, at 576–581. The Court's refusal to undertake such a review for its summary disposition in the case before us is especially disturbing when it is recalled that, under current Court practice, the petitioner does not usually file the record with a petition for certiorari.[5]

In my judgment, this Court does not use its scarce resources wisely when it undertakes to engage in the *de novo* review of factual records in relatively routine litigation. Cf. *United States* v. *Hasting*, 461 U. S. 499, 516–518 (1983) (STEVENS, J., concurring in judgment). When such review is necessary to a disposition, however, and the Court fails to provide it, the problems of this Court's review are still more troubling. For, like a court of appeals that issues an opinion that may not be printed or cited, this Court then engages in decisionmaking without the discipline and accountability that the preparation of opinions requires.[6]

I respectfully dissent from the Court's summary reversal.

portion of the entrance examination was deficient, and even though she had not been cleared for admission by the School's Student Health Physician, Gerald C. Crary, M. D. . . . In an interview on April 20, 1979, the School's Registrar, Mary J. Duncan, told respondent that her acceptance was actually conditional on her presenting evidence of tutoring and testing to establish the requisite thirteenth-grade level of proficiency in mathematics concepts and problems, and on her passing the physical requirements").

[5] See this Court's Rule 21; Stevens, The Life Span of a Judge-Made Rule, 58 N. Y. U. L. Rev. 1, 13 (1983); R. Stern & E. Gressman, Supreme Court Practice 424–429 (5th ed. 1978).

[6] "In our law the opinion has in addition a central forward-looking function which reaches far beyond the cause in hand: the opinion has as one if not its major office to show how like cases are properly to be decided in the future. This also frequently casts its shadow before, and affects the deciding of the cause in hand. (If I cannot give a reason I should be willing to stand to, I must shrink from the very result which otherwise seems good.) Thus the opinion serves as a steadying factor which aids reckonability."

K. Llewellyn, The Common Law Tradition 26 (1960), quoted in Reynolds & Richman, *supra* n. 1, at 1204.

JUSTICE BRENNAN dissents from the Court's summary reversal substantially for the reasons stated by JUSTICE STEVENS.