**PATRICIA N. and Guy N., Individually and as Guardians Ad Litem of Amber N., a minor, Plaintiffs,**

v.

**Paul LEMAHIEU, in his official capacity as Superintendent of the Hawaii Public Schools; Beth Schimmelfennig, in her official capacity as an Education Specialist; Phyllis Ida, in her official capacity as an employee of the Department of Education, State of Hawaii; and Department of Education, State of Hawaii, Defendants.**

**No. CV. 00–00252DAE/LEK.**

United States District Court,
D. Hawaii.

May 29, 2001.

---

Stanley E. Levin, Davis Levin Livingston Grande, Honolulu, HI, for Patricia N., Guy N., Amber N.

Russell A. Suzuki, Department of the Attorney General, Education Division, Honolulu, HI, for Paul Lemahieu, Beth Schimmelfennig, Phyllis Ida.

Russell A. Suzuki, Department of the Attorney General, Education Division, Honolulu, HI, Aaron H. Schulaner, Department of the Attorney General, Education Division, Honolulu, HI, for Department of Education, State of Hawaii.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

DAVID ALAN EZRA, Chief Judge.

The court heard the parties' motions on May 25, 2001. Stanley E. Levin, Esq., and

Anne L. Williams, Esq., appeared on the briefs or at the hearing on behalf of Plaintiffs; Deputy Attorney General Aaron Schulaner appeared on the briefs or at the hearing on behalf of Defendants. After reviewing the motions and the supporting and opposing memoranda, the court GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss or in the Alternative for Summary Judgment. Specifically, the court DENIES Defendants' Motion to Dismiss on all grounds it raises, except that it GRANTS the Motion with respect to the § 1983 claims alleged, which must be dismissed. The court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Summary Judgment. Specifically, the court finds that Defendants are precluded from relitigating certain narrow issues (as discussed *infra*), but that Plaintiffs are not entitled to judgment as a matter of law on the issue of liability.

## BACKGROUND

Plaintiff Amber N. ("Amber") is six years old and has been diagnosed with autism. As such, she is entitled to a Free and Appropriate Public Education ("FAPE") under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1415 et seq. Amber's Individualized Education Program ("IEP") consists of a part day at school, and then intensive home treatment. Concerned that Amber was not receiving all the things to which she was entitled in order to implement the home treatment program (including curriculum, equipment, supplies, etc.), her par-

ents contacted Autism Partnership to help create the home program. They allege that they had numerous contacts with Defendants in which they explained the severe financial and emotional hardship they suffered as a result of Defendants' alleged failure to comply with the IEP requirements.[1] Thereafter (after learning of their rights under the IDEA from another family in July 1999), they requested an administrative hearing on August 30, 1999.

In October 1999, the administrative hearing was held, and in February 2000, a decision was rendered. The decision presented the following issues and answers:

1. Has the Petitioner (Amber) received a Free Appropriate Public Education? NO

2. Has the Petitioner received an appropriate Notice of FAPE? NO

3. Can the Petitioner be reimbursed for their (sic) expenses? YES

4. Can Petitioner request future expenses? YES

5. How long is Petitioner entitled to funding? The specific length of time is yet to be determined.

*See* "Decision and Order" at 2 (attached to Plaintiffs' Motion as Exhibit 1). It ordered that:

1. Petitioner and Respondent shall promptly convene an IEP meeting. The DOE is to submit a program and services to provide FAPE to the Student. Specifically, the IEP shall determine whether Autism Partner-

---

**1.** Plaintiffs allege numerous instances of Defendants ignoring their responsibility to provide a FAPE to Amber. As a result, Amber's father "took family leave for two months from his job, withdrew his deferred compensation to help pay for Amber's Program and eventually was forced to take several months sick leave because of concerns about his heart and the stress this situation was causing." *See*

"Plaintiff's Motion for Partial Summary Judgment" at 5. "Amber's mother quit her job and spent her days and nights coordinating and training trainers and keeping in communication with . . . Autism Partnership." *Id.* at 5–6. To fund Amber's program, her parents exhausted all potential avenues of financial support. *See id.* at 6.

ship and its associated costs will continue to be part of the Student's home program.

2. Respondent shall reimburse Petitioner a total of $13771.88. This amount covers all reimbursable expenses up to July 1, 1999.

*See* "Decision and Order" at 13. As a result of the hearing and decision, Plaintiffs were reimbursed for the direct out-of-pocket expenses they provided in furtherance of Amber's home program. Defendants did not appeal the administrative ruling.

On April 4, 2000, Plaintiffs filed a Complaint in this court, seeking "compensation for the full range of damages they have suffered, including lost wages and damages for emotional distress, all resulting from the wrongs committed by the DOE." *See* "Plaintiffs' Motion for Partial Summary Judgment" at 8. On January 17, 2001. Defendants filed a Motion to Dismiss or in the Alternative for Summary Judgment. In it, they make numerous arguments, including that Eleventh Amendment immunity bars Plaintiffs' claims against the state defendants under the recently decided Supreme Court case *Board of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). On March 23, 2001, Plaintiffs filed their Opposition to Defendants' Motion, and on April 23, 2001, Defendants filed their Reply. On February 16, 2001, Plaintiffs filed a Motion for Partial Summary Judgment, arguing that the hearing decision (in which Plaintiffs were awarded reimbursement) is res judicata between the parties and that they are entitled to summary judgment as to liability. On March 23, 2001, Defendants filed their Opposition, and on April 23, 2001, Plaintiffs filed their Reply.

## STANDARD OF REVIEW

### I. Motion to Dismiss

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). For the purposes of a 12(b)(6) motion, "[r]eview is limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir.1994).

A complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir.1992) (quoting *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989) (further citations omitted)). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *See id.*

To the extent, however, that "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b); *Del Monte Dunes at Monterey, Ltd. v. Monterey*, 920 F.2d 1496, 1507 (9th Cir.1990).

### II. Motion for Summary Judgment

Fed.R.Civ.P. 56(c) provides for summary judgment when:

> ... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The movant bears the initial burden of "identifying ... those portions of the material on file that it believes demonstrates the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630

(9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the movant has met its burden, then "the non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be in favor of either party.'" *California Architectural Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). When the "evidence" produced by each side conflicts, "the judge must assume the truth of the evidence set forth by the opposing party with respect to that fact." Inferences from the facts, disputed and undisputed alike, must be drawn in the light most favorable to the opposing party. *T.W. Elec.,* 809 F.2d at 631. These genuine factual issues must be supported by significant probative evidence. *See Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). Hence, the non-moving party may not stand on its pleadings or merely assert it will controvert the movant's evidence at trial. *See T.W. Elec.,* 809 F.2d at 630. Simple disagreement about a material issue of fact, therefore, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prod.,* 818 F.2d at 1468.

## DISCUSSION

### I. Defendants' Motion to Dismiss

Defendants make several arguments in their Motion to Dismiss: (1) the Eleventh Amendment bars Plaintiffs claims against the state which are based on section 504 of the Rehabilitation Act, (2) collateral estoppel applies given that Plaintiffs and Defendants are also parties to the *Felix* consent decree, (3) the statute of limitations bars all claims before April 4, 1998, (4) Plaintiffs have failed to state a claim under 42 U.S.C. § 1983, (5) punitive damages should not be allowed in this case, and (6) Plaintiffs have failed to allege sufficient facts to establish a violation of the ADA or Section 504 of the Rehabilitation Act. The court now turns to each of these arguments.

### A. Eleventh Amendment Immunity

Two relatively recent Ninth Circuit cases have held that Congress effectively abrogated the states' sovereign immunity under the Rehabilitation Act ("Section 504" or "Rehab Act") and Title II of the Americans with Disabilities Act ("ADA").[2] *See Dare v. California,* 191 F.3d 1167 (9th Cir.1999); *Clark v. California,* 123 F.3d 1267 (9th Cir.1997). Congress may abrogate state sovereign immunity only if: (1) it states unequivocally that it intends to do so, and (2) the waiver constitutes a valid exercise of its authority under § 5 of the Fourteenth Amendment. *See Seminole Tribe v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Congress has such authority under § 5 where it is necessary to protect the rights guaranteed under § 1 of the Fourteenth Amendment (the due process and equal protection clauses). *See Garrett,* 121 S.Ct. at 962. As to prong (1) of the two-part test, there is no question that Congress clearly stated its intention to abrogate sovereign immunity under Title II of the ADA and Section 504 of the Rehab Act. *See* 42 U.S.C. § 2000d–7(a)(1) ("A State shall not be immune under the Eleventh

---

**2.** Title II of the ADA was modeled after Section 504 of the Rehabilitation Act, and therefore case law discussing Title II of the ADA is generally applicable to Rehabilitation Act cases. *See Zukle v. Regents of the University of California,* 166 F.3d 1041, 1045 n. 11 (9th Cir.1999).

Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973."). As to prong (2), in *Clark* and *Dare*, the Ninth Circuit held that abrogation under Title II of the ADA and Section 504 of the Rehab Act was a valid exercise of Congress' power under § 5. *See Clark*, 123 F.3d at 1270; *Dare*, 191 F.3d at 1175. In *Clark*, the Ninth Circuit further held that even in the absence of abrogation of state sovereign immunity under § 5 by Congress, states that have accepted federal funds under the statute (§ 504) have waived sovereign immunity and therefore may be subject to suit on that basis. *See id.* at 1271; *see also Jim C. v. United States*, 235 F.3d 1079, 1080 (8th Cir.2000) ("We hold that section 504 is a valid exercise of Congress' spending power, and that [the state] waived its immunity with respect to Section 504 suits by accepting federal funds.").

Defendants acknowledge this Ninth Circuit precedent, but argue that under two even-more-recently decided Supreme Court cases, the effectiveness of Congress' abrogation has been called into question. *See Board of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). In *Kimel*, the Court considered whether Congress had effectively abrogated the states' sovereign immunity in enacting the Age Discrimination in Employment Act ("ADEA"). The Court held that although the Act contained a clear statement of waiver, the abrogation exceeded Congress' authority under § 5 of the Fourteenth

Amendment, and was therefore invalid. *See Kimel*, 528 U.S. at 91, 120 S.Ct. 631.

Similarly, in *Garrett*, the Court held that Congress had not validly abrogated state sovereign immunity in enacting Title I of the Americans with Disabilities Act. *See Garrett*, 121 S.Ct. at 960. The Supreme Court found that Congress had not made legislative findings of a pattern of unconstitutional discrimination against the disabled by the states, and therefore, could not effectively abrogate state sovereign immunity under § 5. *See id.* 121 S.Ct. at 966. It further found that, even if there were such a pattern, there were "congruence and proportionality" problems with respect to a complete waiver of sovereign immunity. *See id.* However, the *Garrett* Court specifically declined to address whether the Eleventh Amendment bars suit under Title II of the ADA, which has separate and distinct remedial provisions. *See id.* at 960, n. 1.[3] The Courts of Appeal are split as to whether there has been an effective waiver of state sovereign immunity under Title II of the ADA or the Rehab Act. *Compare, e.g., Dare*, 191 F.3d 1167 (9th Cir.1999) (abrogation properly effectuated) to *Alsbrook v. City of Maumelle*, 184 F.3d 999 (8th Cir.1999) (sovereign immunity not validly abrogated under Title II of the ADA).

The Court in *Garrett* also did not discuss the Rehab Act at all, nor did it discuss the issue of possibility of waiver of state sovereign immunity based on receipt of federal funds. Therefore, while *Garrett* and its predecessors may cast doubt on the long-term viability of the holdings in *Clark* and *Dare*, it has not specifically overruled those cases. *See Project Life v. Glendening*, 139 F.Supp.2d 703 n. 1 (D.Md.2001)

---

3. Title I of the ADA makes it unlawful to engage in employment discrimination against individuals with disabilities. *See Zimmerman v. Oregon Dept. of Justice*, 170 F.3d 1169, 1172 (9th Cir.1999). Title II and the Rehabilitation Act, on the other hand, relate to the services, programs or activities of public entities. *See id.* at 1172–73; 42 U.S.C. § 12132.

(finding that *Garrett* does not apply to Title II of the ADA; only published case so far to address the question).[4] Accordingly, the court remains bound by the *Clark* and *Dare* precedent unless and until the Ninth Circuit or Supreme Court rules otherwise, and DENIES Defendants' Motion to Dismiss based on Eleventh Amendment immunity.[5]

### B. Collateral Estoppel/*Felix* Consent Decree

■ Defendants' next argument for dismissal is based on the fact that the parties to the instant suit are also parties to the *Felix* consent decree. As such, Defendants argue that Plaintiffs' "ADA claim arises out of the same fact pattern and could have been raised by the Felix attorneys, but was not." *See* Motion to Dismiss at 8. Therefore, they contend that Plaintiffs should now be estopped from raising such claims.

This argument fails for a couple of reasons. First, Defendants cite absolutely no authority to support the proposition that collateral estoppel applies in this case. Second, no provision of the *Felix* consent decree purports to preclude class members or their parents from bringing individual claims under the IDEA or the Rehab Act. The decree deals with systematic problems in state educational and mental health programs—it does not remedy the individual problems of specific class members. *See* Consent Decree § IX(A)(44)(h) (Cv. No. 93–367) (providing that "individual complaints shall not be acted upon in this

action by the Monitor or the Court"). This court is aware of no case in this district brought by a *Felix* class member that has been dismissed based on collateral estoppel.

### C. Statute of Limitations

■ In a very short one-paragraph argument, Defendants assert that the statute of limitations bars any of Plaintiffs' claims arising before April 4, 1998. The statutes under which Plaintiffs bring suit do not specify limitations periods. Therefore, courts must determine and apply the most closely analogous state statute of limitations. *See Livingston v. Keenan*, 82 F.3d 912, 915 (9th Cir.1996). The court finds that, in this case, Hawaii's statute of limitations for personal injury claims is most analogous to Plaintiffs' instant claims. Hawaii Revised Statutes § 657–7 provides that such claims are subject to a two-year statute of limitations.

■ The Ninth Circuit has not specifically addressed the question of when the limitations period in IDEA/Rehab Act cases begins to accrue, though other circuits have. In *Jeremy H. v. Mt. Lebanon Sch. Dist.*, for example, the Third Circuit held that the limitations period for IDEA-related claims begins to accrue once the administrative process is complete. *See* 95 F.3d 272, 280–81 (3rd Cir.1996). It considered determining accrual based on when the acts complained of occurred (with tolling during the pendency of administrative

---

4. The court notes that in *Wroncy v. Oregon Dept. of Transp.*, 2001 WL 474550 (table), the Ninth Circuit declined to apply *Garrett* to a claim under Title II of the ADA. The court notes this opinion, but does not rely on it, as it is unpublished.

5. The court further notes that this holding is in keeping with the decisions of the other

district judges in this district. Both Judge Kay and Judge Gillmor have held that they are bound to follow Ninth Circuit precedent in *Clark* and *Dare*. *See Patrick W. v. LeMahieu*, CV. NO. 98–843 ACK (filed April 16, 2001); *Doe v. Hawaii*, CV. NO. 99–079 HG (filed April 9, 2001).

proceedings),[6] but found that this method was impractical because it would require "a complex tolling analysis, and allow[ ] different plaintiffs widely varying (and perhaps difficult-to-ascertain) periods in which they may bring suit." *Id.* at 280.

The court agrees with the Third Circuit that the appropriate time to begin the limitations period is at the conclusion of the administrative proceedings. In addition to the reasons identified by the Third Circuit, the court finds that this method of calculation is most workable because of the difficulty in determining when the injury arises in these kinds of cases. For example, in the instant case, when did Amber's injury arise? At some point after the development of the IEP when the DOE allegedly failed to follow through? After Amber's parents contacted the DOE and they allegedly failed to respond? When Amber's parents allege they learned (in July 1999) that she was entitled to FAPE? It seems to the court as though Plaintiffs are alleging injuries that were ongoing between 1997 and 1999, when they filed their administrative claim. As such, it makes sense to begin the limitations period at the conclusion of the administrative proceedings.[7] In this case, the hearing decision was issued on February 2, 2000, and the time for appeal expired 30 days

later. As this action was instituted in April 2000, Plaintiffs are clearly within the limitations period. Defendants' statute of limitations argument, therefore, fails.

### D. Failure to State a Claim under § 1983

In Plaintiffs' Complaint at ¶ 1, they state that their claims are authorized by the Rehab Act, the IDEA, and 42 U.S.C. § 1983. At ¶ 50, they also state that they have rights protected under § 1983. Other than these brief references, the bulk of the Complaint focuses on the IDEA and Rehab Act claims. Sovereign immunity has not been waived with respect to § 1983 claims; therefore, state officials may only be sued in their official capacities for prospective injunctive relief. *See Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Doe v. Lawrence Livermore National Laboratory*, 131 F.3d 836, 839 (9th Cir.1997); *Pahk v. Hawaii*, 109 F.Supp.2d 1262, 1267 (D.Haw.2000) ("Congress has not exercised its authority to override Hawaii's Eleventh Amendment immunity from section 1983 suits against a state and its official acting in their official capacities").

Plaintiffs have sued the individually named Defendants in their official capaci-

---

6. As exhaustion of administrative remedies under the IDEA is a prerequisite to filing related claims under the Rehab Act, it necessarily follows that the statute of limitations would be (at the very least) tolled during the pendency of the administrative proceedings. Otherwise, if the administrative proceeding took a particularly long time, plaintiffs might be entirely barred from bringing a civil action. *See id.* at 280.

7. The court notes that even using the alternative approach to determine the limitations period, Plaintiffs' claims still fall within it. The administrative process took approximately six months (from August 1999, when Plaintiffs filed for a hearing, to March 2000, when

the time for appeal expired). Subtracting these six months from the limitations period (as tolling requires, see previous footnote), Plaintiffs' claims must have accrued no earlier than October 1997. The DOE determined in November 1997 that Amber was eligible for special education services. Thus, Plaintiffs' claims must necessarily have accrued after this date.

In addition, the administrative decision established that Amber's parents had not received appropriate notice of her entitlement to FAPE. Thus, the statute of limitations should probably not begin to run in any event until Amber's parents learned of this fact in 1999.

**1252**

ties, but do not appear to seek prospective injunctive relief, other than to make a general request for "such other equitable and legal relief that is warranted and just." *See* Complaint at ¶ 57(5). Defendants therefore ask (in another very brief argument) that the § 1983 claims and the individually named state defendants be dismissed from the case. The court agrees that because Plaintiffs do not appear to request prospective injunctive relief, the § 1983 claims against the individually named state Defendants in their official capacities must fail. Any claims based on § 1983 are therefore dismissed.[8]

### E. Punitive Damages Claims

 Defendants next argue that Plaintiffs' claims for punitive damages should be dismissed. In this respect, it urges the court to adopt the reasoning of the Sixth Circuit in *Moreno v. Consolidated Rail Corp.*, 99 F.3d 782 (6th Cir.1996). In *Moreno*, the court held that punitive damages were not recoverable under the Rehab Act. The court engaged in a long discussion about the history of the Rehab Act and the traditional remedies available under it. *See id.* at 788–792. It ultimately concluded that punitive damages under § 504 were not appropriate because, among other reasons, Congress never indicated an intent to allow anything other than compensatory damages in § 504 cases,[9] and because Congress chose other ways to "punish" violators of § 504. *Id.* at 791.

However, a case out of this district came to precisely the opposite conclusion. *See*

*Burns–Vidlak v. Chandler*, 980 F.Supp. 1144 (D.Haw.1997) (Kay, J.). In *Burns–Vidlak*, the court also undertook an extensive examination of the Rehab Act and its development throughout the court system. *See id.* Like the *Moreno* court, the *Burns–Vidlak* court then looked to the following test to determine when punitive damages may be awarded: (1) if there is no clear direction to the contrary by Congress; and (2) such relief would be appropriate. *See id.* at 1149 (citing *Franklin v. Gwinnett*, 503 U.S. 60, 71, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)).[10] While *Moreno* held that "such relief" would not be appropriate, *Burns–Vidlak* held the opposite. *See id.* at 1150 ("the Court finds *Moreno* unpersuasive"). First, the court found that Congress had not indicated an aversion to punitive damages in § 504 cases. "To the contrary, the Congress has confirmed the importance of awarding damages against states when they violate § 504." *Id.* at 1149–50. Second, the court found that an award of punitive damages may be appropriate in some circumstances, again rejecting the *Moreno* court's rationale. *See id.* at 1151 ("Not finding any of the rationales proffered in *Moreno* convincing, this Court finds that punitive damages may be appropriate in certain § 504 suits."). Whether the circumstances warrant an award of punitive damages is something that should be decided on a case-by-case basis (as is done in regular tort suits), rather than by "creating a blanket rule." *Id.* Accordingly, the court re-

---

8. The court notes here that Plaintiffs failed to respond to Defendants' § 1983 argument in their Opposition.

9. In contrast, Congress specifically provides for punitive damages in cases arising under § 501 of the Rehab Act, capping them at $300,000.

10. Specifically, the Supreme Court in *Franklin* stated that:

> the general rule, therefore, is that absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute

*Franklin*, 503 U.S. at 62, 112 S.Ct. 1028.

fused to dismiss the punitive damages claims against the state defendants.

In addition to its findings under the *Franklin* test, the court in *Burns–Vidlak* also considered the Ninth Circuit's holding in *Kling v. Los Angeles,* 769 F.2d 532, 534 (9th Cir.1985) *rev'd on other grounds,* 474 U.S. 936, 106 S.Ct. 300, 88 L.Ed.2d 277 (1985), in which the court stated that the "full panoply" of damages are available under § 504. *See Burns–Vidlak,* 980 F.Supp. at 1147 (also citing cases from the Fourth, Eighth and Eleventh Circuits in which the courts stated that the "full panoply" of remedies were available under § 504). Further, it relied on several other cases from around the country in which punitive damages actions were permitted under § 504. *See id.* (collecting cases from around the country including Maine, Connecticut and New York); *see also Proctor v. Prince George's Hospital Center,* 32 F.Supp.2d 820, 829–30 (D.Md.1998) (post *Burns–Vidlak* case also holding that punitive damages available under § 504).

After reviewing the relevant case law, this court finds itself persuaded by *Burns–Vidlak* rather than *Moreno,* and therefore declines to dismiss Plaintiffs' punitive damages claims. Applying the *Franklin* test, the court finds that Congress did not provide any "clear direction" as to punitive damages in § 504 cases. Under *Franklin,* then, a federal court may award any "appropriate" remedy. Like the *Burns–Vidlak* court, this court holds that what is "appropriate" should be based on a case-by-case determination, rather than by fashioning a blanket rule.

## F. Sufficient Facts to Establish ADA or § 504 Violation

Defendants next try to dismiss this case based on the argument that Plaintiffs have failed to allege sufficient facts to establish a violation of the ADA or § 504. Defen-dants' brief is rather unclear on the precise bases under which it brings this argument. The court understands Defendants essentially to be arguing the following: (1) that Amber's parents do not have standing to bring claims against Defendants, as they themselves are not disabled, and (2) that Plaintiffs have failed to produce sufficient evidence of discrimination to support their claims. The court now turns to these arguments.

### 1. Parents' Standing

■■■ Defendants' argument on this point is very brief and contains very little citation to authority. Nevertheless, it purports to argue that under Section 504, parents of a disabled child may not bring suit on their own behalf. Their argument is based on the elements of a Rehab Act claim as set out by the court in *Burns–Vidlak,* 939 F.Supp. 765, 769 (D.Haw. 1996). A plaintiff must show: (1) that he is handicapped within the meaning of the Act, (2) that he is otherwise qualified for the services sought, (3) that he was excluded from the services sought solely by reason of his handicap, and (4) that the program in question received federal financial assistance. *See id.* Defendants deduce, therefore, that because the parents themselves are not disabled, they may not bring suit on their own behalves.

The court rejects this argument. The Rehab Act provides remedies to "any person aggrieved by any act or failure to act by any recipient of Federal assistance . . . under section 794 [the Rehab Act] of this title." 29 U.S.C. § 794a(a)(2). The court in *Burns–Vidlak* did not have before it a case in which a minor's parents filed suit individually as well as on behalf of their child, and it did not address the question of standing. In fact, few courts (none in this circuit) have ever specifically addressed whether parents can bring individ-

ual claims in addition to claims brought on behalf of their child under the IDEA and the Rehab Act (and Defendant did not cite any). In this district, however, many such claims have proceeded without a discussion of standing. *See, e.g., Mark H. v. LeMahieu,* Cv. No. 00–282 DAE/LEK (order filed Oct. 18, 2000); *Stephen L. v. LeMahieu,* Cv. No. 00–338 DAE/KSC (order filed Oct. 18, 2000); *Patrick W. v. LeMahieu,* 98–843 ACK/KSC (order filed Dec. 15, 2000).

Further, in similar contexts, courts have held that non-disabled individuals may have standing to sue under Title II of the ADA and the Rehab Act. In *Innovative Health Systems v. White Plains,* for example, the Second Circuit held that a drug and alcohol rehabilitation center could assert ADA and Rehab Act claims on its own behalf, even though the center itself was not "disabled." 117 F.3d 37, 46–47 (2d Cir.1997). The court found that because the enforcement provision of the Rehab Act "extends its remedies to 'any person aggrieved' by the discrimination of a person on the basis of his or her disability," Congress apparently intended "to define standing to bring a private action under 504 as broadly as is permitted by Article III of the Constitution." *Id.; accord Smith–Berch, Inc. v. Baltimore County,* 68 F.Supp.2d 602 (D.Md.1999); *cf. Greater Los Angeles Council on Deafness v. Zolin,* 812 F.2d 1103, 1115 (9th Cir.1987) (holding that council on deafness had standing to sue to recover expenses incurred on behalf of disabled individuals). In *Weber v. Cranston School Committee,* the First Circuit found that parents have standing to assert Section 504 claims on their own behalf, also noting that courts have given "broad construction to the statutory enforcement language of Title VI and the Rehabilitation Act." *See* 212 F.3d 41, 47–49 (1st Cir.2000). The court stated:

> Although Congress could have limited the remedial provisions of the Rehabilitation Act to claims brought by or on behalf of disabled individuals, it did not do so in apparent recognition of the fact that disabled individuals may need assistance in vindicating their rights from individuals who may have their own claim to relief under the Act.

*Id.* at 49; *accord Whitehead v. School Bd. for Hillsborough County,* 918 F.Supp. 1515, 1522 (M.D.Fla.1996) (holding that parents of disabled child could recover under section 504 for retaliation claims).

Considering the language of the Rehab Act and the authorities cited above, the court concludes that Amber's parents have standing to sue in their own capacities. They are clearly "persons aggrieved" within the meaning of the Act—their Complaint alleges that both parents suffered serious hardships as a result of Defendants' alleged denial of a FAPE to Amber. The court, therefore, will not dismiss Amber's parents from the Complaint.

**2. Sufficient Evidence**

<span style="color:#000"></span> Defendants' final argument is that Plaintiffs have failed to present sufficient evidence of discrimination to sustain their claims. In *Ferguson v. City of Phoenix,* the Ninth Circuit held that to make out a claim for damages under the Rehab Act, Plaintiffs must show intentional discrimination, which, in these cases may be defined as "deliberate indifference." [11] 157

---

**11.** The Ninth Circuit noted that the district court had used the "deliberate indifference" definition, while the state had urged application of a "discriminatory animus" definition. *See Ferguson,* 157 F.3d at 675. The Ninth Circuit did not decide which definition to use, but this court, persuaded by the district court's ruling, adopts the "deliberate indifference" definition. *See Ferguson v. City of Phoenix,* 931 F.Supp. 688, 697 (D.Ariz.1996).

F.3d 668 (9th Cir.1998); *cf. Sellers v. School Board of City of Manassas, Va.,* 141 F.3d 524, 529 (4th Cir.1998) (holding that "either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of handicapped children"). The court finds that here, Plaintiffs have shown sufficient evidence to demonstrate "deliberate indifference" on the part of Defendants, at least for purposes of a Motion to Dismiss (or in the alternative for summary judgment). Plaintiffs' Concise Statement of Facts in Opposition to Defendants' Motion establishes, among other things, that: (1) Amber's 1998 and 1999 IEPs required that she receive 20 hours per week of services, but that, despite the IEPs, no one from the DOE communicated with Plaintiffs about how to implement them in all of 1998, (2) Plaintiffs repeatedly complained that Amber was not receiving the program established by the IEPs—no materials, no trainers, no curriculum, etc., (3) despite Plaintiffs' repeated complaints, Defendants' failed to respond or in any way communicate with Plaintiffs, and (4) when Defendants did send trainers to the Plaintiffs, they were untrained. Plaintiffs never received any support from the DOE until after they filed for an administrative hearing. As a result of Defendants' repeated failure, despite repeated requests, to provide a FAPE to Amber, Plaintiffs had to drain their own resources to do so. Further, there is evidence that Defendants knew Amber was entitled to a FAPE but ignored their responsibilities to provide it.[12] There are, therefore, genuine issues of material fact as to whether Defendants acted with "deliberate indifference" such as to support Plaintiffs' claims for damages.[13]

To summarize, the court DENIES Defendants' Motion to Dismiss on all grounds it raises, except that it GRANTS the Motion with respect to the § 1983 claims alleged, which must be dismissed. Having concluded that Plaintiffs' claims may proceed, the court next turns to their Motion for Partial Summary Judgment.

## II. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs make two arguments in their Motion: (1) that the hearing decision is res judicata between the parties, and (2) that they are entitled to partial summary judgment as to liability because Amber has been excluded from FAPE because of her disability and Defendants acted with "deliberate indifference." The court now addresses these arguments.

---

12. Plaintiffs maintain that Defendants were aware of their responsibilities under the law, as they initially set up IEPs for Amber but then failed to follow through on them. Additionally, Defendants are party to the *Felix* consent decree, which should make Defendants aware of their responsibilities under federal law.

13. Defendants assert that the court should rely on *Ferguson* in coming to the conclusion that there is insufficient evidence of discriminatory intent in this case. In *Ferguson,* the Ninth Circuit addressed complaints from deaf individuals alleging claims that the city intentionally discriminated against them based on deficiencies in the city's 9-1-1 system for the

deaf. *See* 157 F.3d 668. The court held that the problems complained of were "only sporadic and little different from what other municipalities have experienced when trying to install and operate an emergency system for the benefit of the public," and therefore, no "intentional discrimination" could be inferred. *Id.* at 675. Defendants now seek to analogize to *Ferguson* by arguing that because the state is likewise trying to implement a system under the law, it should be excused deficiencies in the process. The court rejects this argument. Unlike in *Ferguson,* here there is *some evidence of "deliberate indifference"* not merely attributable to an attempt to work out the kinks in a new system.

## A. Res Judicata

Plaintiffs ask this court to find that the factual and legal determinations made at the administrative hearing (that the DOE failed to provide FAPE to Amber and that the program paid for by the parents was appropriate) should be considered res judicata as to the instant suit. The court does not understand the Plaintiffs to be asking (at this juncture) that their administrative victory be automatically translated into a victory on their present § 504 claims, but rather only that Defendants be precluded from re-litigating whether Defendants failed to provide FAPE and whether the parents' own program was appropriate. Indeed, as discussed *supra* and *infra*, the question of whether Defendants acted with "deliberate indifference," for example, would still need to be litigated. *See Breen v. St. Charles R–IV Sch. Dist.*, 2 F.Supp.2d 1214 (E.D.Mo.1997) (finding that failure to provide FAPE, by itself, would not rise to the level of a Rehab Act violation where district provided IEP).

In *Bator v. State of Hawaii*, the Ninth Circuit held that, under Hawaii law, preclusive effect should be given to the findings of administrative agencies if: (1) the issue decided in the prior action is identical to the issue in the current action, (2) a final judgment on the merits was rendered, and (3) the parties are the same. *See* 39 F.3d 1021, 1027 (9th Cir.1994). In addition, to obtain preclusive effect in federal court, the administrative determination must also meet three more requirements: (1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate. *See Misischia v. Pirie*, 60 F.3d 626, 629 (9th

Cir.1995); *see also Carroll v. Maui County*, 866 F.Supp. 459, 464 (D.Haw.1994) (finding that "in administrative situations 'res judicata should be applied with flexibility' ") (citation omitted). The court now examines each of these factors.

First, are the issues are identical? As to the narrow questions of whether Amber was denied FAPE and whether her parents' program was appropriate, the issues are the same. Second, final judgment on the merits was rendered at the administrative hearing, which Defendants did not appeal. They instead complied with the administrative ruling. Third, the parties are the same. The court finds, therefore, that this first set of requirements are met, and now addresses the other "fairness" concerns.

The "fairness" concern implicated here (as identified by Defendants) is that Defendants did not have a full and fair opportunity to litigate the issues which Plaintiffs now seek to preclude. Specifically, they argue that an IDEA hearing does not provide the same opportunity for discovery [14] as more formal administrative hearings or court proceedings do. At IDEA hearings, DOE education staff attend and participate, but are not represented by lawyers (often the students and parents are also not represented by lawyers, though in this case they were). Further, the incentives to litigate are somewhat different in that the IDEA hearing officer can only award equitable remedies as opposed to the courts, which can award money damages.

After considering Defendants' argument, the court concludes that they did have a full and fair opportunity to litigate. The res judicata test does not require that the parties have the exact same opportunity to

14. In this vein, Defendants assert that it was not until 5 days before the hearing that they learned of the 13 witnesses (including two experts for whom no expert reports were included) and 50 exhibits that Plaintiffs planned to put on.

litigate, only that they have a full and fair opportunity to do so. In this case, Defendants had plenty of incentive to fully address whether Amber received a FAPE. Although the hearing officer would not have the power to grant money damages, he or she can order the state to provide costly educational benefits to the students (as well as reimbursement for money spent by the parents). Further, the prevailing party at an IDEA hearing is entitled to (potentially great) attorneys fees and costs. Defendants do not cite any evidence that they did not put on as a result of the limited discovery available in the IDEA hearing, nor that they would have more vigorously rebutted Plaintiffs' witnesses had more time been available. Finally, just because Defendants chose not to have an attorney present at the hearing, does not mean they did not have the opportunity to have one. Therefore, the court finds that Plaintiffs have met all the requirements for res judicata.

In addition to meeting the requirements under the rule, the court notes a few additional reasons why Defendants should be estopped from litigating the narrow issues presented here. First, they did not appeal the administrative decision, thereby essentially waiving their right to challenge the validity of the FAPE determination. Second, the court finds that res judicata should apply as a matter of judicial economy. As stated above, Defendants have not pointed this court to what they would have done differently had the administrative proceeding been more "formal." Therefore, the court must conclude that re-examining the issue of whether FAPE was provided to Amber would be merely a rehash of the administrative proceeding, a proceeding which (at least under circumstances of an administrative appeal) is entitled to some deference by this court. *See Ojai Unified Sch. Dist. v. Jackson,* 4 F.3d 1467, 1472 (1993). Therefore, Defendant is precluded from re-litigating these issues: (1) that Amber did not receive FAPE, and (2) that Amber's parents provided her with an appropriate education for which the DOE was required to reimburse them. The court points out, however, that this ruling is very limited. Many issues still must be presented to the fact finder, including whether there was discrimination (intentional or otherwise) under § 504, and what damages, if any, Plaintiffs are entitled to.[15] *See, e.g., Bator,* 39 F.3d at 1027 (administrative determination that individual had suffered injury entitled to preclusive effect).

## B. Liability

Plaintiffs' second and final argument is that they are entitled to judgment as a matter of law with respect to liability. As discussed above, this court has found that for Plaintiffs to sustain a monetary damages claim under § 504, it must show that Defendants acted with discriminatory in-

---

**15.** The court now takes this brief opportunity to reject Defendants' argument that because this court in other similar cases (e.g., *Stephen L.,* Cv. No. 00–338 DAE) denied Defendants' res judicata arguments it must now reject Plaintiffs'. In *Stephen L.,* the DOE made an administrative determination that the plaintiff had been denied FAPE. As in this case, the plaintiff sued, claiming that the denial of FAPE caused damages. Defendants in *Stephen L.* argued that because the issue of denial of FAPE had already been litigated, Plain-

tiffs could not bring § 504 claims based on it. The court held that principles of res judicata would not apply to entirely bar plaintiffs from bringing claims under § 504. This was in part because issues over intent and damages had not been adjudicated at the administrative level. The situation at bar is entirely different. Plaintiffs here merely seek issue preclusion on the narrow issues identified above. Defendants had tried to use it to obtain dismissal of the entire case.

tent, here defined as at least "deliberate indifference." *See* Section I.F.2., *supra.*

Plaintiffs submit that the undisputed facts establish that Defendants failed "to implement or fund the home-based program to which they had agreed, even after the parents repeatedly notified them that the funding, provision of curriculum, etc. had not been forthcoming." *See* Plaintiffs' Memo at 22; Concise Statement of Facts. They argue that this amounts to deliberate indifference as a matter of law.

On the other hand, Defendants submit that the behavior of Defendants in this case fails to meet any standard of discriminatory intent, including "deliberate indifference," as discussed above (a proposition this court has already rejected). The submissions of Defendants show that the DOE developed two IEPs for Amber (one in 1998 and one in 1999) as well as an Individualized Family Service Plan (in 1997). A Dr. Koven made an assessment as to Amber's case which led to the development of a mental health service plan, which "included three objectives related to the implementation of an in-home program." *See* Schimmelfennig Decl. at ¶ 56. This mental health service plan was reviewed and revised on a number of occasions, including April 1998, July 1998, October 1998, and January 1999. *See id.* at 57–59. As part of the plan, Amber apparently had "four part-time Hoahana trainers that [had] demonstrated outstanding skill in working with [her]." *Id.* at ¶ 57. Ms. Schimmelfennig states that the "records show that not only skills trainers (whose services were authorized and paid for by the Department of Health) were providing the discreet trial training services required by Amber's IEP, but that the recommended periodic coaching and training (which was not specified by the IEP) was

provided by the Department of Health as well." *Id.* at ¶ 62.

Further, Defendants' submissions show that a Ms. Oshiro would come to the home three or four times a week for two hours at a time to work with Amber. *Id.* at ¶ 64. Ms. Ida discussed alternatives with Plaintiffs. *See* Ida Decl. at ¶ 9. She stated that she was unaware of the Plaintiffs financial concerns until February of 1999. *See id.* at ¶ 8.

While it is clear that Defendants did not meet their obligations under the law to provide FAPE to Amber (as determined by the administrative hearing), there still remain questions as to whether this failure rises to the level of "deliberate indifference." In her closing brief at the administrative hearing, Ms. Schimmelfennig stated that "the only services specified by the IEP (that was stipulated by both parties to be appropriate) are the services that were provided by the skills trainers who were clearly well trained." Schimmelfennig Decl. at 66. This statement could indicate that Defendants, in good faith, believed that they were providing FAPE to Amber (though it turned out they were not), thus barring recovery under § 504. *See Breen,* 2 F.Supp.2d 1214; *Brantley v. Independent Sch. Dist. No. 625,* 936 F.Supp. 649 (D.Minn.1996) (no evidence of "bad faith" or "gross misjudgment" despite plaintiffs' claims that district failed to timely diagnose student's disability, failed to implement IEP, and failed to provide reasonable accommodation).

The court determines, therefore, that summary judgment in favor of Plaintiffs as to liability is not appropriate, just as it was not appropriate in favor of Defendants. There remain issues of material fact as to the question of whether Defendants' behavior rises to the level of "delib-

erate indifference."[16] These questions are ones that should be decided by the fact finder. The court finds that Defendants' alleged conduct was neither egregious enough nor innocuous enough to entitle either party to judgment as a matter of law. The question of intent calls for a factual determination; the issue of liability must be submitted to the fact finder. Accordingly, Plaintiffs' Motion for Summary Judgment is DENIED.

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss or in the Alternative for Summary Judgment. Specifically, the court DENIES Defendants' Motion to Dismiss on all grounds it raises, except that it GRANTS the Motion with respect to the § 1983 claims alleged, which must be dismissed. The court GRANTS IN PART AND DENIES IN PART Plaintiffs' Motion for Summary Judgment. Specifically, the court finds that Defendants are precluded from relitigating certain narrow issues (as discussed *supra*), but that Plaintiffs are not entitled to judgment as a matter of law on the issue of liability.

IT IS SO ORDERED.

---

16. A quick glance at each party's concise statement of facts demonstrates that genuine issues of material fact as to "deliberate indifference" remain. For example, Defendants assert that they believed that the DOH was paying for Amber's home program, while Plaintiffs assert that they were paying for it personally. *See* CSF 2. Plaintiffs assert that the DOH "knew intimately the stresses and burdens the provision of an appropriate home program for Amber would entail," while De-

fendants maintain only that they knew Plaintiffs had made a request for reimbursement. *See* CSF 5. The parties further dispute whether Phyllis Ida told Plaintiffs that DOE might not help and whether she responded (in some way) to Plaintiffs' request for reimbursement for Autism Partnership. *See* CSF 19 & 20. Resolution of these and other factual issues may go to a determination of whether Defendants acted with "deliberate indifference."