Walter S.J. WENGER, Individually and as Parent and Natural Guardian of his son, Steven Joseph Wenger, Plaintiff,

v.

CANASTOTA CENTRAL SCHOOL DISTRICT ("CCSD"); Patricia Vacca, Individually and as Chairperson of the Committee on Special Education for the CCSD; Samuel L. Colella, Individually and as Interim Superintendent of the CCSD; Arthur Blymiller, Individually and as School Psychologist of the CCSD; Felipe Canizares, M.D., Individually and as School Physician of the CCSD; Barbara Stevenson, Individually and as Parent–Member of the Committee on Special Education of the CCSD; Catherine Sangster, Individually and as a Teacher of the CCSD; Pamela Colangelo, Individually and as Occupational Therapist of the CCSD; Lori Everett, Individually and as Speech Therapist of the CCSD; Deborah Gallinero, Individually and as Physical Therapist of the CCSD; Pat Murphy, Individually and as President of the School Board of the CCSD; Dewey J. Romagnoli, Individually and as Vice–President of the School Board of the CCSD; Donald J. Harvey, Individually and as Trustee of the School Board of the CCSD; Michael BUDA, Individually and as Trustee of the School Board of the CCSD; Ione LeBlanc, Individually and as Trustee of the School Board of the CCSD; Jeannine Masucci, Individually and as Trustee of the School Board of the CCSD; John R. Mengucci, Individually and as Trustee of the School Board of the CCSD; and Thomas Sobol, Commissioner of Education of the State of New York, Defendants.

No. 95–CV–1081 (FJS)(GJD).

United States District Court, N.D. New York.

April 14, 1997

Walter S.J. Wenger, Canastota, pro se.

Bond, Schoeneck & King, Syracuse (S. Paul Battaglia, of counsel), for Canastota Defendants.

Dennis C. Vacco, Attorney General of the State of New York (Senta B. Siuda, of counsel), for Defendant Sobol.

SCULLIN, District Judge.

## MEMORANDUM–DECISION and ORDER

### Introduction

Plaintiff Walter Wenger brings this action against Defendant Canastota Central School District ("CCSD") and various individuals connected to the school district (all the defendants except Defendant Sobol are referred to as the "CCSD Defendants") based on alleged violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, section 504 of the Rehabilitation Act of 1973 ("section 504"), 29 U.S.C. §§ 794 *et seq.*, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Plaintiff alleges that the CCSD Defendants failed to provide his son Steven Wenger with an appropriate education in violation of the IDEA, that they discriminated against Steven on the basis of his disability in violation of section 504, and that their failure to provide Steven with an appropriate education violated the Due Process Clause. Plaintiff also alleges that Defendant Thomas Sobol ("Defendant Sobol"), as Commissioner of Education of the State of New York, failed to protect Steven's rights under the IDEA and failed to take affirmative measures to remedy the actions of the CCSD Defendants. Plaintiff seeks injunctive relief as well as compensatory and punitive damages. Presently before the Court are a

motion for summary judgment by the CCSD Defendants pursuant to Rule 56 of the Federal Rules of Civil Procedure, and a motion for judgment on the pleadings by Defendant Sobol pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

### Background

In March 1991, when Steven was fifteen years old, he was seriously injured in an automobile accident, sustaining multiple trauma, including a severe head injury. Since that time, Steven has been classified as traumatic brain injured.[1] After Steven's initial hospitalization, he was transferred to a head injury rehabilitation facility in Pennsylvania, where he remained until May 1992. In July 1992, Steven was admitted to Crouse–Irving Memorial Hospital in Syracuse, New York.[2]

During the 1992–93 and 1993–94 school years, Defendant CCSD provided special education and related services to Steven.[3] On September 20, 1994, the committee at CCSD responsible for developing Steven's individualized education program ("IEP"),[4] the Committee on Special Education ("CSE"), met with Plaintiff to prepare Steven's IEP for the 1994–95 school year.[5] Steven's 1994–95 IEP provided for two hours per day of special education, thirty minutes of speech/language therapy twice per week, and physical/occupational therapy on a consultant basis once per week for eight weeks and once per month for the remainder of the 1994–95 school year. Steven's 1994–95 IEP also included special education goals for Steven, including the ability to (1) respond in a consistent manner to visual, auditory, and multisensory stimuli, and (2) achieve a functional range of motion in his upper and lower extremities.

By letter dated September 21, 1994, Plaintiff asked for and was granted an impartial hearing to review the IEP recommended by the CSE. The hearing began on October 11, 1994 and concluded on December 22, 1994. At issue in the hearing was whether the IEP prepared at the September 20, 1994 CSE meeting was appropriate.[6] In a decision dated January 25, 1995, the hearing officer decided that Steven's 1994–95 IEP was appropriate. Thereafter, Plaintiff appealed the hearing officer's decision to the State Review Officer ("SRO"). On April 6, 1995, the SRO issued a decision concurring with the hearing officer's decision that Steven's 1994–95 IEP

---

1. "Traumatic brain injury" means "an injury caused by an external physical force ... with resulting impairments that adversely affect educational performance. The term includes open or closed head injuries ... resulting in mild, moderate or severe impairments." N.Y.Comp. Codes R. & Regs. tit. 8, § 200.1(mm)(12). While the parties do not dispute Steven's classification as traumatic brain injured, there is dispute as to his characterization of being in a "persistent vegetative state." In 1992, a neurologist examined Steven and determined that he was in a persistent vegetative state. This determination was confirmed in late 1994 by Steven's physician at Crouse–Irving Memorial Hospital. Plaintiff disputes this characterization.

2. During June 1992, Steven was hospitalized at St. Camillus Health and Rehabilitation Center in Syracuse.

3. In a separate action, 93–CV–1601, Plaintiff challenges the sufficiency and consistency of the services provided during the 1992–93 school year.

4. The IEP is a "written plan which specifies the special education programs and related services to be provided to meet the unique educational needs of a student with a disability." N.Y.Comp. Codes R. & Regs. tit. 8, § 200.1(t); *see also* 20

U.S.C. § 1401(a)(20). "Although IDEA sets forth a blueprint for state and local programs, the states are left to fashion the requisite programs. In New York state, the IEP is produced by a Committee on Special Education ('CSE'), whose members are appointed by the board of education of the school district." *Heldman v. Sobol*, 962 F.2d 148, 152 (2d Cir.1992). N.Y.Educ.Law § 4402(1)(b)(1). The child's IEP is developed by the CSE in consultation with the child's teacher and parents or guardian. N.Y.Educ. Law § 4402(1)(b)(1); 20 U.S.C. § 1401(a)(20).

5. The CSE originally met in July 1994 and developed an IEP for 1994–95. After Plaintiff requested an impartial hearing to challenge the appropriateness of the IEP, the CSE decided to meet with Plaintiff on September 20, 1994 and reevaluate its recommended IEP.

6. Also at issue in the administrative hearing was whether Steven was entitled to compensatory special education and related services for the CCSD Defendants' failure to provide special educational services during part of the 1992–93 school year. However, while this claim was addressed at the administrative level, the Court finds that it is not properly before the Court because it is the subject of an earlier action brought by Plaintiff, *Wenger v. Canastota Central School District et al,*. 93–CV–1601.

was appropriate. On August 4, 1995, this action was filed.

## Discussion

As stated, Plaintiff brings this action alleging three causes of action against the CCSD Defendants: (1) that the CCSD Defendants failed to provide his son Steven with an appropriate education in violation of the IDEA, 20 U.S.C. §§ 1400 *et seq.;* (2) that the CCSD Defendants discriminated against Steven on the basis of his disability in violation of section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.;* and (3) that the CCSD Defendants violated Plaintiff's and Steven's due process rights in violation of the Fourteenth Amendment to the United States Constitution. The CCSD Defendants deny these allegations and have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is warranted if, when viewing the evidence in a light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 457, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Commander Oil v. Advance Food Serv. Equip.,* 991 F.2d 49, 51 (2d Cir.1993). The test for whether there is a genuine issue of material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant on summary judgment. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Second, any dispute of material fact must be "genuine." A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* It is the non-moving party's burden to demonstrate that

there is evidence to support each essential element of his or her claim. The Court will address each cause of action *seriatim.*

### *Plaintiff's IDEA Claim*

### IDEA

The IDEA is designed to assist states to meet the educational needs of children with disabilities, and it establishes an enforceable fight to a "free appropriate public education." [7] *Mrs. W. v. Tirozzi,* 832 F.2d 748, 750–51 (2d Cir.1987) (citing 20 U.S.C. § 1400(c)). No state or local educational agency may receive federal funding unless it provides children with disabilities the right to a free appropriate education. A free appropriate public education is defined as "special education and related services" tailored to the individual needs of the child, pursuant to an individualized education program ("IEP"). [8] 20 U.S.C. § 1401(a)(18). As stated, an IEP is a "written plan which specifies the special education programs and related services to be provided to meet the unique educational needs of a student with a disability." N.Y.Comp.Codes R. & Regs. tit. 8, § 200.1(t); *see also* 20 U.S.C. § 1401(a)(20). In New York state, the IEP is produced by a Committee on Special Education ("CSE"), whose members are appointed by the board of education of the school district in consultation with the child's teacher and parents or guardian. N.Y.Educ. Law § 4402(1)(b)(1); *see also* 20 U.S.C. § 1401(a)(20).

If a child's parents are dissatisfied with their child's IEP or with anything related to the child's education, they may file a complaint with the state educational agency. 20 U.S.C. § 1415(b)(1)(E). Such complaints are reviewed at a due process hearing conducted by an impartial hearing officer appointed by the state or local educational agency. 20 U.S.C. § 1415(c). If a hearing is conducted at the local level, an appeal may be taken to the state agency. *Id.* Any party aggrieved

---

7. Prior to 1990, the IDEA was known as the Education of the Handicapped Act or the Education of All Handicapped Children Act. *See* 20 U.S.C. § 1400(a).

8. "Special education" means "specially designed instruction to meet the unique needs of a child with a settings." 20 U.S.C. § 1401(16)(A). "Re-

lated services" include physical and occupational therapy services as well as medical services for diagnostic and evaluative purposes as may be required to assist a child with a disability to benefit from special education. 20 U.S.C. § 1401(17).

by the outcome of the state administrative proceeding may bring an action to review the administrative decision in any state or federal court of competent jurisdiction. 20 U.S.C. § 1415(e)(2).

In *Board of Education v. Rowley,* the Supreme Court set forth a two-step inquiry by which district courts determine whether school districts have complied with the IDEA's requirement of providing a "free appropriate public education." 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). First, courts must determine whether the school district has complied with the IDEA's procedural requirements. *Id.* at 206, 102 S.Ct. at 3050–51. Second, courts must address whether the IEP developed through these procedures is "reasonably calculated to enable the child to receive educational benefits." *Id.* at 206–07, 102 S.Ct. at 3051.

The Supreme Court has determined that a "free appropriate public education" must consist of "educational instruction specially designed to meet the unique needs of the [disabled] child, supported by such services are necessary to permit the child 'to benefit' from the instruction." *Rowley,* 458 U.S. at 188–89, 102 S.Ct. at 3042. While the benefit must be "meaningful," the IDEA does not require that school districts attempt to maximize each child's potential. *Id.* at 200, 102 S.Ct. at 3047–48.

A court reviewing the findings and conclusions reached in a state administrative proceeding must base its decision on the preponderance of the evidence, after reviewing the administrative record and any additional evidence presented. 20 U.S.C. § 1415(e)(2). In determining whether school districts have complied with the IDEA, the Supreme Court has recognized that courts do not have spe-

cial expertise in the field of educational policy and should not substitute the court's judgment for that of school authorities. *Rowley,* 458 U.S. at 206, 102 S.Ct. at 3050–51. Due deference is to be afforded administrative decisions made by state officials who possess expertise in the field. *Briggs v. Board of Educ.,* 882 F.2d 688, 693 (2d Cir.1989) (citing *Rowley,* 458 U.S. at 207–08, 102 S.Ct. at 3051–52). In particular, where a state has set up a two-tiered review process, federal courts are required to defer to the final decision of the state authorities, in this case, that of the SRO. *Thomas v. Cincinnati Bd. of Educ.,* 918 F.2d 618, 624 (6th Cir.1990).

■ The issue before the Court in this case is whether Steven's 1994–95 IEP was "reasonably calculated to enable [him] to receive educational benefits." *Rowley,* 458 U.S. at 207, 102 S.Ct. at 3051.[9] Plaintiff contends that Steven's IEP was inappropriate because it was not specifically designed to address Steven's medical needs, and that additional and more extensive physical and occupational services other than those provided for Steven would be appropriate to this end.

At Plaintiff's impartial hearing in the Fall of 1994, testimony was received from Steven's special education teacher and personal physician, as well as his related services providers. The hearing officer also reviewed the reports of two independent medical evaluators. Steven's special education teacher, Catherine Sangster, who was Steven's teacher between 1992 and 1995, submitted a report stating that since January 1994, when Steven suffered a seizure, his "reactions to his environment decreased in their frequency, duration, consistency and predictability." In addition, Ms. Sangster testified that "[o]ne

---

**9.** Pursuant to *Rowley,* Plaintiff also claims that the CCSD Defendants violated the procedural protections of the IDEA by failing to advise him of his rights as the parent of a disabled child and by failing to include Plaintiff as a full participant in the CSE meetings. However, "[c]laims of procedural errors not presented to the administrative hearing officer are not preserved for judicial review by the trial court." *Hampton Sch. Dist. v. Dobrowolski,* 976 F.2d 48, 53 (citing *David D. v. Dartmouth Sch. Comm.,* 775 F.2d 411, 424 (1st Cir.1985), *cert. denied,* 475 U.S.

1140, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986)). In the present case, Plaintiff failed to raise his procedural claims with the administrative heating officer. Moreover, Plaintiff does not qualify under the exceptions to the exhaustion requirement in that resort to the administrative process would not be futile, the agency has not adopted a policy or practice of general applicability that is contrary to law, and he can recover adequate relief in the administrative forum. *See Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2d Cir.1987). Accordingly, Plaintiff's procedural issues are not properly before the Court.

day [Steven] might track a lit object and not do it [again] for forty days." The report also noted that Steven's "lack of progress over the course of the year as well as his decreased level of responsiveness makes further recommendation for services difficult." Steven's related services providers testified that his responses to multisensory stimulation are inconsistent and reflexive in nature rather than responsive. They opined that the levels of physical and occupational therapy provided in Steven's 1994–95 IEP were adequate.

The two independent medical evaluators, Dr. Sisung and Dr. Labi, in their reports stated that the severity of Steven's physical and mental condition prevented him from benefiting from any special education. Dr. Sisung reported that Steven did not demonstrate signs of obvious auditory processing, purposeful movement, or social awareness, and that his responses appeared to be reflexive rather than responsive. Moreover, Steven's own physician, Dr. Dube, testified that Steven is incapable of learning, unable to respond voluntarily, and that educational services would be medically futile.

At the hearing, Plaintiff failed to provide any evidence indicating that Steven would benefit from increased special education and related services, i.e., occupational and physical therapy.[10]

After considering all the evidence before him, the hearing officer decided that Steven's 1994–95 IEP was appropriate and that Steven's needs were primarily medical rather than educational.[11] The SRO concurred with the hearing officer's decision and likewise found that Plaintiff's 1994–95 IEP was appropriate.[12]

In reviewing the appropriateness of an IEP, the Court's inquiry must be a "fact-specific inquiry whereby the Court carefully examines 'the nature and severity of the child's handicapping condition, his needs and abilities, and the school's response to the child's needs.'" *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1048 (5th Cir.1989). Once a child is deemed eligible for special education and related services, a child's level of benefit is a necessary consideration in formulating an appropriate IEP. *Christopher M. v. Corpus Christi Independent Sch. Dist.*, 933 F.2d 1285, 1290 (5th Cir.1991).

In Steven's case, the severity of his disability cannot be ignored. The record reveals that Steven has been diagnosed with traumatic brain injury and that his responses to stimuli are reflexive rather than responsive. Steven's own physician and independent medical evaluators have stated that the severity of Steven's condition prevents him from learning and that he is incapable of benefiting from special education. In light of these extreme limitations, Steven's 1994–95 IEP was designed to assist Steven to respond in a consistent manner to visual, auditory, and multisensory stimuli, and to achieve a functional range of motion in his lower and upper extremities. Given the severity of Steven's physical and mental condition, the evidence before the hearing officer clearly established that the special education and related services provided pursuant to Steven's 1994–95 IEP were reasonably calculated to achieve these goals.[13]

---

10. Nor has Plaintiff provided any such evidence at this time. To the extent that Plaintiff argues that Steven's IEP should provide medical services, the Court notes that the applicable regulations restrict medical services to those services rendered for diagnostic or evaluation purposes. 34 C.F.R. § 300.16(a).

11. Specifically, the hearing officer stated that the special education and related services provided pursuant to Steven's IEP were consistent with professional recommendations, and that "[p]rofessional discretion must be applied in this case in the absence of legal guidance concerning a child in such a medically frail condition." However, the heating officer did modify the IEP by eliminating the related services of speech/language and occupational therapy because they were duplicative of services performed by Steven's special education teacher. In addition, the heating officer directed that the IEP provide Steven with physical therapy for evaluative and consultative purposes for one-half hour per month.

12. The SRO modified the hearing officer's decision slightly to include occupational therapy as specified in Steven's 1994–1995 IEP.

13. The Court notes that in *Rowley*, the Supreme Court stated that, "[t]he determination of when handicapped children are receiving sufficient educational benefits to satisfy the requirements of the [IDEA] presents a more difficult problem.

Therefore, on the basis of the record before the Court and giving due deference to the administrative proceedings below, the Court finds that Steven's 1994–95 IEP was reasonably calculated to provide educational benefits and that Steven was afforded a "free appropriate public education" as required by the IDEA.

### Plaintiff's Section 504 Claim

In addition to his claim under the IDEA, Plaintiff claims that the CCSD Defendants discriminated against Steven on the basis of Steven's disability by failing to provide a free appropriate public education in violation of section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.* ("section 504").[14] The CCSD Defendants argue that their compliance with the IDEA satisfies compliance with section 504.

■ In addition to their obligation to provide a free appropriate public education pursuant to the IDEA, section 504 specifically requires state and local education agencies to provide a free appropriate public education for children with disabilities. *See, e.g., Yankton Sch. Dist. v. Schramm,* 93 F.3d 1369, 1376 (8th Cir.1996); *see also* 34 C.F.R. § 104.33 (regulation implementing section 504 requiring the recipients of federal assistance operating public schools to provide a free appropriate public education). Section 504 provides relief from discrimination, whereas the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination.

■ In order to make out a violation of section 504 in the context of educating children with disabilities, a plaintiff must demonstrate not only that there was a failure to provide an appropriate education, he or she must also demonstrate bad faith or gross misjudgment. *Monahan v. State of Nebraska,* 687 F.2d 1164, 1170–71 (8th Cir.1982). As set forth above, Plaintiff has failed to demonstrate a failure to provide a free appropriate education, not to mention bad faith or gross misjudgment. Accordingly, the Court finds that the CCSD Defendants are entitled to summary judgment as a matter of law.

### Plaintiff's Due Process Claim

Plaintiff also claims that the CCSD Defendants violated both his and Steven's due process procedural rights guaranteed by the Fourteenth Amendment by failing to provide Steven with a free appropriate public education.[15] In view of the discussion above, Plaintiff's claim pursuant to the due process clause fails because, as stated, the Court finds that the CCSD Defendants did not deny Steven the right to an appropriate education. As a result, Plaintiffs due process claim is dismissed as a matter of law.

### Defendant Sobol's Motion

As stated, Plaintiff also claims that Defendant Sobol, as Commissioner of Education of the State of New York, violated the IDEA by failing to ensure that Steven received a free appropriate public education or take affirmative measures to remedy the actions of the CCSD Defendants. Presently before the

---

The [IDEA] requires participating States to educate a wide spectrum of handicapped children, from the marginally hearing-impaired to the profoundly retarded and palsied." 458 U.S. at 202, 102 S.Ct. at 3048. The determination of when a disabled child is receiving sufficient educational benefit is made even more difficult when the disabled child does not seem to fall in the "wide spectrum" of disabled children whom states are required to educate. *But cf. Timothy W. v. Rochester, N.H., Sch. Dist.,* 875 F.2d 954 (1st Cir. 1989) (holding that the IDEA requires that school districts are required to provide education for all children with disabilities, regardless of the severity of their disabilities).

**14.** Plaintiff contends that Steven's right to a free appropriate public education was denied because

his 1994–95 IEP failed to include extensive occupational and physical therapy services in addition to the services provided pursuant to Steven's 1994–95 IEP.

**15.** The Court notes that while parents of children with disabilities are entitled to bring actions based on alleged violations of the Due Process Clause of the Fourteenth Amendment, these actions must be brought pursuant to 42 U.S.C. § 1983. *Mrs. W. v. Tirozzi,* 832 F.2d 748, 755 (2d Cir.1987). In the present case, Plaintiff failed to bring his due process claim pursuant to § 1983. However, because Plaintiff is proceeding pro se, the Court reads Plaintiff's claim as if it included § 1983.

Court is Defendant Sobol's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

In deciding a Rule 12(c) motion, courts apply the same standard as that applicable to a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[16] *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the well-pleaded facts as true, and draw all reasonable inferences in favor of the non-movant. *Id.* The court should not dismiss the complaint "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

■ Furthermore, a Rule 12(b)(6) motion should also be read in the context of the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure, and "[a]lthough the court reads pro se complaints as broadly as possible to find a valid claim, the complaint, nonetheless, must satisfy the minimum pleading requirements of Rule 8(a)." *Gould v. Russi*, 830 F.Supp. 139, 142 (N.D.N.Y.1993). Rule 8(a) provides, in pertinent part, that the complaint must set forth "[a] short and plain statement of the claim showing that the [plaintiff] is entitled to relief" Fed.R.Civ.P. 8(a). "In other words, even though a pro se plaintiff's complaint is not held to the same standard as one prepared by an experienced attorney, courts still require that, at a minimum, a pro se plaintiff adhere to Rule 8(a) and sufficiently apprise a defendant of the charges asserted against it." *Gould*, 830 F.Supp. at 142–43. Further, "[b]aldly conclusory statements that fail to give notice of the bare events of which the plaintiff complains need not be credited by the court." *Moscowitz v. Brown*, 850 F.Supp. 1185, 1190 (S.D.N.Y.1994).

■ In the present case, Plaintiff's complaint makes wholly conclusory allegations that Defendant Sobol "failed and neglected to insure that [sic] the rights of Plaintiff's son, Steven, under the IEP requirements and other provisions of the Individuals with Disabilities Education Acts [sic] and regulations, or to take any affirmative measures to remedy the actions of the local school district, the CCSD, thereby denying Plaintiff's son, Steven, the right to due process under the law." Plaintiff's Complaint, ¶ 50.

"Although the court is obligated to look for a valid claim and accept the alleged facts supporting the claim as true, it is not the court's responsibility to breathe life into an action where none exists." *Gould*, 830 F.Supp. at 143. In Plaintiff's complaint, he fails to allege facts to support his conclusory allegation that Defendant Sobol "failed and neglected" to ensure the rights of Steven under the IDEA. Specifically, the complaint fails to state which rights under the IDEA Defendant Sobol failed to protect, and how Defendant Sobol failed and neglected to ensure these rights. As to Plaintiff's claim that Defendant Sobol failed to take affirmative measures to remedy the actions of the CCSD, Plaintiff fails to allege when and how Defendant Sobol failed to take these measures.

Therefore, because Plaintiff fails to offer facts supporting his claim that Defendant Sobol violated the IDEA, and fails to apprise Defendant Sobol of the underlying facts supporting his claims, the Court finds that Plaintiff's complaint fails to state a claim upon which relief can be granted. As a result, Defendant Sobol is entitled to judgment on the pleadings pursuant to Rule 12(c).

### Conclusion

Therefore, it is hereby

ORDERED that the CCSD Defendants' motion for summary judgment is GRANTED. It is further

ORDERED that Defendant Sobol's motion for judgment on the pleadings is GRANTED,

---

16. The Court notes that Rule 12(c) serves as an auxiliary device that enables a party to assert the 12(b)(6) defense after the pleadings are closed. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). *See also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (1995 Supp.).

and that the complaint is DISMISSED in its entirety.

IT IS SO ORDERED.