**JANET G., individually and on behalf of her minor child, Joshua G., Plaintiff,**

v.

**State of HAWAII, DEPARTMENT OF EDUCATION, and Pat Hamamoto, in her official capacity as Superintendent of the Hawaii Public Schools, Defendants.**

No. CIV. 05–00268ACKLEK.

United States District Court, D. Hawai'i.

Dec. 29, 2005.

Keith H.S. Peck, Peck & Associates, Honolulu, HI, for Plaintiff.

Holly T. Shikada, Department of the Attorney General Education Division, Lane H. Tsuchiyama, Deputy Attorneys General, Honolulu, HI, for Defendants.

## ORDER DENYING PLAINTIFFS' REQUESTED RELIEF

KAY, District Judge.

## BACKGROUND

Plaintiff Joshua G. ["Joshua"] was first deemed eligible for special education services in his first grade school year. (March 17, 2005 Administrative Decision ¶ 2).[1] In May 2004, Defendant[2] State of Hawaii Department of Education ["DOE"] re-evaluated Joshua to determine whether he was qualified for special education and related services under the Individuals with Disabilities Education Act ["IDEA"], 20 U.S.C. § 1400, et seq. (Defs.' Resp. at 3). As part of the re-evaluation, the DOE administered several assessments to Joshua for the purpose of gathering information to ascertain whether Joshua met the eligibility criteria. (Defs.' Resp. at 3–4). Based on Joshua's reported disability of Dyslexia, Joshua's Eligibility Determination Team believed that he might qualify for special education and related services under the category of Specific Learning Disability ["SLD"], HAR § 8–56–26. (Defs.' Resp. at 4). Various standardized tests were administered to determine whether Joshua suffered from a disorder that affected his ability to listen, learn, think, speak, read, write, spell, or do mathematical calculations. (Defs.' Resp. at 4–5).

On May 26, 2004, an eligibility meeting was held. (March 17, 2005 Administrative Decision ¶ 4). Joshua's mother and father both attended this meeting. (March 17, 2005 Administrative Decision ¶ 4). At the meeting, the DOE found that Joshua did not qualify for special education and related services under the category of SLD because Joshua's test scores exceeded the eligibility threshold set forth in HAR § 8–56–26. (Defs.' Resp. at 5; March 17, 2005 Administrative Decision ¶ 4).

The March 17, 2005 Administrative Decision indicates that reference was made to Section 504 (Chapter 53) services during the DOE's May 26, 2004 meeting with Joshua's parents. (March 17, 2005 Administrative Decision at 3–4). More specifically the Decision explains that: Psychological Examiner Jan Ohta testified that at the May 26, 2004 meeting, the possibility of providing Joshua with Section 504 services was "mentioned, but not considered, as not all members were present"; Psychological Examiner Reginald Jaderstrom "did not recall going through the 504 criteria during the May 26, 2004 meeting"; Joshua's Special Education Teacher, Nancy Yomogida, testified that during the May 26, 2004 meeting, Section "504 modifications were brought up, but the team did not feel that [Joshua] had a disability that significantly impacted his ability to learn. Therefore, [Joshua] did not qualify under [Section] 504" and that Joshua's parents "appeared to understand that [Joshua] did not qualify for special education benefits ... under 504, and they did not ask any questions";

---

1. The Court notes that Plaintiffs did not provide the Court with a Statement of Facts in their Opening Brief. While Plaintiffs' Complaint does provide some factual information, they omitted much of the history pertinent to this matter. In compiling the factual background recounted here, the Court, accordingly, relied primarily on the Statement of Facts provided by Defendants and the March 17, 2005 Office of Administrative Hearings' Findings of Fact, conclusions of Law, and Decision.

2. The Court notes that Defendants state that for the purposes of this case, Defendant Department of Education, State of Hawaii ["DOE"] and Defendant Patricia Hamamoto ["Defendant Hamamoto"], Superintendent of the DOE, should be treated as a single Defendant and that any relief provided by the Court to the DOE should also apply to Defendant Hamamoto. (Defs.' Reep. at 2 n. 1).

and Joshua's Principal testified that the only mention he made regarding Section 504 is that he would look into it. (March 17, 2005 Administrative Decision at 4–5).

On May 26, 2004, the DOE issued a Prior Written Notice of Department Action ["PWN"] notifying Plaintiffs of the DOE's IDEA eligibility determination. (Defs.' Resp. at 6). The May 26, 2004 PWN states that Joshua was "rescinded from Special Education services as of 05/26/2004." (R. 175). The PWN also states, under the section entitled "Description of other options considered," "504 offered by the Principal" and, under the section entitled, "Reasons these options were rejected," "504: School counselor led the discussion. Joshua did not have a disability that significantly impacts his learning. 504 was not pursued." (R. 175).

On August 16, 2004, Joshua's father, Delmar G. Jr., sent a letter to Caroline Wong ["Wong"], Principal of Moanalua Middle School ["MMS"], stating:

> My wife and I have decided to send our son Joshua [G.], to private school this year. We felt that he needed an IEP to address his needs. We did not get an IEP or documentation explaining why Joshua was ineligible for an IEP or 504 accommodations. We recently received a list of accommodations, we agree he needs this help, but feel it should have been official. We would like the Department of Education to reimburse us for the costs of his schooling at private school. Should a meeting be scheduled to discuss our concerns, you may contact my wife . . . .

(R. 135). On September 8, 2004, Joshua's parents met with Wong to discuss the range of supports available to Joshua in an educational setting. (Defs.' Resp. at 7). At this meeting, Wong offered to look into the possibility of pursuing Section 504 modifications and accommodations for Joshua. (Defs.' Resp. at 7). In a letter

addressed to Wong, dated September 20, 2004, Joshua's parents stated, "Thank you for meeting with us. You had mentioned you will check into Section 504 for Joshua's eligibility. We would like to have a 504 eligibility meeting. Joshua would need at the least, that kind of support to be successful in school." (R. 136). MMS received the September 20, 2004 letter on September 23, 2004. (Defs.' Resp. at 7; March 17, 2005 Administrative Decision ¶ 15).

Following the September 20, 2004 letter, Joshua's mother, Plaintiff Janet G., and the MMS Student Services Coordinator, Jesse Yano, exchanged several missed telephone calls, in an attempt to set a date to discuss Section 504 accommodations. (March 17, 2005 Administrative Decision ¶ 19). In his March 17, 2005 Administrative Decision, the Administrative Hearings Officer also stated that Joshua's "Mother testified that the [Student Services Coordinator] left a telephone message on her recorder, listing two dates to schedule the meeting. Mother left a return message with the [Student Services Coordinator], informing him that she was unavailable for these two dates, but not indicating what dates she could attend. Upon cross examination, Mother stated that she wanted to go with Father to the meeting. Although Father could have attended the meeting by himself, he was not as knowledgeable as Mother about the process." (March 17, 2005 Administrative Decision ¶ 19). As noted by the Hearings Officer, the record indicates that the DOE issued a written Meeting Announcement on September 28, 2004 informing Joshua's parents that a meeting was scheduled for October 13, 2004. (R. 162). Finally, the Hearings Officer noted that the meeting "was held on the last allowable date under the statute, October 13, 2004." (R. 60).

On October 13, 2004, MMS convened a Student Support Team meeting to determine whether or not to pursue a formal evaluation for modifications and accommodations under HAR Chapter 53, Hawaii's implementing regulations for Section 504. (Defs.' Resp. at 8). Joshua's parents did not attend the October 13, 2004 meeting. (Defs.' Resp. at 8). At the October 13, 2004 meeting, Joshua's Student Support Team found that Joshua was ineligible for Section 504 services. (March 17, 2005 Administrative Decision ¶ 21; Defs.' Resp. at 9). According to Meeting Notes of the Student Support Team Meeting, held on October 13, 2004,

> A 504 evaluation was conducted to determine Joshua's need for Section 504, Chapter 53, 504 Modification Plan services. Parent's written request was received and parents were invited to a scheduled Student Support Team (SST) meeting. SST members in attendance determined available current information will be used for the evaluation.... The information (current assessments, observation reports, and records) is adequate to determine Joshua's evaluation for 504 Modification Plan services. Joshua will not be evaluated for 504 Modification Plan services. Although Joshua may have a diagnosed learning impairment of dyslexia, it appears that there isn't any functional data available to determine that this impairment substantially limits his learning in the classroom.

(R. 173). The Notes also indicate that Joshua's mother was contacted regarding the meeting on September 28, 2004; Joshua's father was contacted on September 29, 2004; and Joshua's parents were also contacted on October 1, 2004. (R. 173).

On October 13, 2004, the DOE issued a PWN that stated that Joshua "will not be evaluated for 504 Modification Plan services" and that "[a]lthough Joshua may have a diagnosed learning impairment of dyslexia, it appears that there isn't any functional data available to determine that this impairment substantially limits his learning in the classroom." (R. 176). On November 1, 2004, Plaintiffs filed a Request for Impartial Hearing. (R. 217). Plaintiffs stated that their concerns were that Joshua "was deemed ineligible for IDEA and Section 504 services improperly" and "[t]his was a substantive breach of FAPE." (R. 217).

On February 3 and 4, 2005, the Office of Administrative Hearings, Department of Commerce and Consumer Affairs, State of Hawaii ["OAH"] conducted an administrative hearing. (Defs.' Resp. at 3). Defendants state that Joshua and his parents were afforded the opportunity to present evidence supporting their positions at these hearings. (Defs.' Resp. at 3). On March 17, 2005, the Administrative Hearings Officer issued a Decision ["OAH Decision"] dismissing Plaintiffs' claims for relief as contained in their November 1, 2004 Request for Impartial Hearing. (R. 60).

Plaintiffs' filed their Complaint appealing the OAH Decision on April 14, 2005. Defendants filed an Answer on July 1, 2005. On September 12, 2005, Plaintiffs filed an Opening Brief. On October 12, 2005, Defendants filed a Responsive Brief. The Court held a hearing on the appeal on December 14, 2005.

At the hearing, Plaintiffs argued that 34 C.F.R. § 300.403(c), regarding reimbursement for private school placements, applies to actions brought pursuant to Section 504 of the Rehabilitation Act. The Court requested that the parties provide supplementary briefs as to Plaintiffs' 34 C.F.R. § 300.403(c) argument, since that issue had not been raised in Plaintiffs' Opening Brief. Both parties submitted supplemental memoranda on December 19, 2005.

## STANDARD

■ Hawaii Revised Statutes section 91–14, entitled "Judicial review of contested cases," provides in relevant part:

(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are: (1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdictions of the agency; or (3) Made upon unlawful procedure; or (4) Affected by other error of law; or (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91–14(g).[3] Under HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6). *Medeiros v. Hawaii Dept. of Labor and Indus. Relations,* 108 Hawai'i 258, 118 P.3d 1201, 1208 (2005) (*citing Lingle v. Hawaii Government Employees Ass'n, AFSCME, Local 152, AFL–CIO,* 107 Hawai'i 178, 111 P.3d 587, 592 (2005) (internal citations omitted)).

## DISCUSSION

Plaintiffs' Opening Brief states that the "principal issue in this case is whether the administrative hearings officer erred in determining that [Joshua] received a timely and valid determination of eligibility *under Section 504* of the Rehabilitation Act ... and consequently that [the DOE] is not responsible for tuition reimbursement." (Pls.' Brief at 2) (emphasis added). More specifically, Plaintiffs' argue: 1) Joshua's eligibility meeting for Section 504 services was not timely because it was not held within twenty days of their initial request for Section 504 services; and 2) the meeting was invalid because Joshua's parents were not afforded a mutually agreeable time and date to attend and participate in the meeting. (Pls.' Brief at 10).

While Plaintiffs rely on the IDEA to establish a jurisdictional basis for their Complaint, their Opening Brief does not set forth any arguments based on the DOE's IDEA procedures or determinations nor does it challenge the Hearings Officer's determination that Joshua was ineligible for benefits under the IDEA.[4] However, at the December 14, 2005 hearing, Plaintiffs argued that 34 C.F.R. § 300.403(c), regarding reimbursement for private school placements, applies to actions brought pursuant to Section 504 of the Rehabilitation Act. Plaintiffs' counsel

---

3. The court notes that, at the December 14, 2005 hearing, the parties agreed that HRS § 91–14(g) provides the standards applicable to this case.

4. The Court notes that Plaintiffs' Complaint alleges that the Hearings Officer's March 17, 2005 award violated the IDEA's Mediation provisions, 20 U.S.C. § 1415(e), and one of its implementing regulations, 34 C.F.R. § 300.511, regarding the timelines and convenience of hearings and reviews. However, Plaintiffs' Opening Brief did not address any issues related to their IDEA claims instead they presented arguments based solely on Section 504 of the Rehabilitation Act. In an effort to ascertain the nature of any IDEA claims the Plaintiffs might be advancing, the Court reviewed Plaintiffs' Closing Brief submitted to the hearings Officer in the course of the Administrative hearing below. However, the only arguments set forth by Plaintiffs in that document related to the same Section 504 claims advanced here. (R. 27–36).

also stated, at the December 14, 2005 hearing, that Plaintiffs are simply seeking redress for the DOE's alleged failure to provide a timely Section 504 determination and are not challenging the DOE's findings that Joshua is ineligible for services under the IDEA and Section 504.

## I. *Statutory Framework*

The Individuals with Disabilities in Education Act ["the IDEA"], 20 U.S.C. § 1400, *et seq,* was enacted by Congress to, among other things, "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs ... [and] to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A) and (B). The IDEA provides federal money to state and local education agencies to assist them in educating disabled children, on the condition that the state and local agencies implement the substantive and procedural requirements of the IDEA. *See Robb v. Bethel School District # 403,* 308 F.3d 1047, 1049 (9th Cir.2002). The IDEA explicitly provides for extensive procedural safeguards including the opportunity to obtain administrative and judicial review of decisions they deem unsatisfactory or inappropriate. *See* 20 U.S.C. § 1415.

Conversely, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, itself contains no procedural rights or guarantees. Section 504 of the Act provides:

No otherwise qualified individual with a disability ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ....

29 U.S.C. § 794(a). The regulations promulgated under Section 504 do, however, require the establishment of procedural safeguards. *See* 34 C.F.R. § 104.36 ("A recipient that operates a public or secondary education program or activity shall establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services, a system of procedural safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with the opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure. Compliance with the procedural safeguards of [the IDEA] is one means of meeting this requirement.").

The Rehabilitation Act does not explicitly provide for a private right of action. However, "Section 505(a)(2) of the Rehabilitation Act declares that the 'remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 ... shall be available' for violations of § 504, as added, 92 Stat. 2983, 29 U.S.C. § 794a(a)(2)." *Barnes v. Gorman,* 536 U.S. 181, 185, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002) (*quoting* 29 U.S.C. § 794a(a)(2)). Although Title VI does not mention a private right of action, the United States Supreme Court has found an implied right of action under Title VI. *Id.* Thus, the Supreme Court has held that the Rehabilitation Act is also enforceable through a private cause of action. *Id.*

 The United States Court of Appeals for the Ninth Circuit has held that to prevail in a case brought under Section 504 of the Rehabilitation Act, a plaintiff must show that the plaintiff is: 1) a handicapped person under the Act; 2) otherwise qualified for the position sought; 3) being excluded from the position solely by reason of plaintiff's handicap; and 4) seeking a position that exists as part of a program

or activity receiving federal financial assistance. *Smith v. Barton,* 914 F.2d 1330, 1338–39 (9th Cir.1990) (*citing Doe v. New York Univ.,* 666 F.2d 761, 774–75 (2nd Cir.1981)). Moreover, the Ninth Circuit has held that to make out a claim for damages under the Rehabilitation Act, a plaintiff must show intentional discrimination, which has been defined as "deliberate indifference." *Ferguson v. City of Phoenix,* 157 F.3d 668 (9th Cir.1998); *Patricia N. v. Lemahieu,* 141 F.Supp.2d 1243, 1254 (D.Haw.2001); *see also Sellers v. School Board of City of Manassas, Va.,* 141 F.3d 524, 529 (4th Cir.1998) (holding that "either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of handicapped children").

▮ Finally, the scope of protections provided under the IDEA and Section 504 of the Rehabilitation act differ. *See Smith v. Robinson,* 468 U.S. 992, 1016, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (*superseded by statute on other grounds*[5], Handicapped Children's Protection Act of 1986, Pub.L. No. 99–372, 100 Stat. 796) (stating that "Section 504 and the EHA [Education of the Handicapped Act][6] are different substantive statutes). While the EHA guarantees a right to a free appropriate public education, § 504 simply prevents discrimination on the basis of handicap" and that "[t]he significant difference between the two, as applied to special education claims, is that the substantive and procedural

rights assumed to be guaranteed by both statutes are specifically required only by the EHA."); *see also A.W. v. Marlborough Co.,* 25 F.Supp.2d 27, 31 (D.Conn.1998) (*citing Wenger v. Canastota Cent. School Dist.,* 961 F.Supp. 416, 422 (N.D.N.Y.1997). " 'Section 504 provides relief from discrimination, whereas the IDEA provides relief from inappropriate educational placement decisions regardless of discrimination.' " *A.W. v. Marlborough Co.,* 25 F.Supp.2d at 31 (*quoting Wenger,* 961 F.Supp. at 422 (citation omitted)).

## II. *Plaintiffs' Section 504 Claims*

Here, Plaintiffs have not established a cause of action under Section 504 of the Rehabilitation Act. As discussed above, to establish a cause of action under Section 504, Plaintiffs must show that Joshua is: 1) a handicapped person under the Act; 2) otherwise qualified for the position sought; 3) being excluded from the position solely by reason of his handicap; and 4) seeking a position that exists as part of a program or activity receiving federal financial assistance. *See Smith v. Barton,* 914 F.2d 1330, 1338–39 (9th Cir.1990) (*citing Doe v. New York Univ.,* 666 F.2d 761, 774–75 (2nd Cir.1981)).

▮ First, Plaintiffs have not established that Joshua is a "handicapped person" under the Act. Section 504's implementing regulations define handicapped person as "any person who (i) has a physical or mental impairment which substan-

---

**5.** The Supreme Court, in *Smith,* also held that any action for discrimination in education must be limited to an action under the IDEA. *N.L v. Knox County Schools,* 315 F.3d 688, 695 (6th Cir.2003) (*citing Smith,* 468 U.S. at 1009, 104 S.Ct. 3457). Congress addressed this holding in 1986 through an amendment to the IDEA, 20 U.S.C. § 1415(1), which states, "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under ... title V of the Rehabilitation Act of 1973 [29 U.S.C. §§ 790 *et seq.*] ....'" The Amendment "has

not been held to have altered the prior holdings that more harm [i.e., discrimination on the basis handicap] is required than a denial of free appropriate public education to make out a section 504 claim." *N.L v. Knox County Schools,* 315 F.3d at 695.

**6.** The Education of the Handicapped Act ["EHA"] is the precursor to the IDEA. *See Porter v. Board of Trustees of Manhattan Beach Unified School Dist.,* 307 F.3d 1064, 1066 (9th Cir.2002).

tially limits one or more major life activities, (ii) has a record of such impairment, or, (iii) is regarded as having such an impairment." 34 C.F.R. § 104.3(j)(1). Major life activities "means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 34 C.F.R. § 104.3(j)(2)(ii). Here, Defendants state that they question whether Joshua is even a qualified individual, under section 504, "[b]ecause his SST decided not to pursue further action under section 504." (Defs.' Resp. at 13). Plaintiffs do not address this issue at all. As to the second element, if Joshua is a "handicapped person" under the Act, he would also be "otherwise qualified" because age is the only program requirement applicable to public elementary education. *See* 34 C.F.R. § 104.3(1)(2). Most critically, however, Plaintiffs have neither demonstrated nor alleged that Defendants discriminated against Joshua solely by reason of his handicap.[7] The fourth element is satisfied because the DOE does not dispute that it receives federal financial assistance. The Court finds that Plaintiffs have failed to establish a claim under Section 504 of the Rehabilitation Act because they have not established that Joshua is a handicapped person under the Act nor have they alleged or demonstrated that Defendants discriminated against Joshua solely because of such handicap.

III. *Plaintiffs' Argument Based on 34 C.F.R. § 300.403(c)*

■ At the December 14, 2005 hearing, Plaintiff argued that 34 C.F.R.

§ 300.403(c), regarding reimbursement for private school placements, applies to actions brought pursuant to Section 504 of the Rehabilitation Act. 34 C.F.R. § 300.403(c) provides, in relevant part:

> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private preschool, elementary, or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate....

The explanatory parenthetical following the text of 34 C.F.R. § 300.403 states that the statutory authority for the regulation is 20 U.S.C. § 1412(a)(10)(C), which is part of the IDEA. Moreover, 34 C.F.R. § 300.403 is contained within the Department of Education's Office of Special Education and Rehabilitative Services' regulations to implement the IDEA, which are found in Part 300 of Title 34 of the Code of Federal Regulations; whereas Section 504's implementing regulations are contained within the Department of Education's Office for Civil Rights' regulations implementing Section 504 of the Rehabilitation act, which are contained within Part 104 of Title 34 of the Code of Federal Regulations. Finally, neither 20 U.S.C. § 1412(a)(10)(C) nor 34 C.F.R. § 300.403

---

7. Moreover, as discussed above, to make out a claim for damages under the Rehabilitation Act, a plaintiff must show intentional discrimination, defined as "deliberate indifference." *Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir.1998); *Patricia N. v. Lemahieu*, 141 F.Supp.2d 1243, 1254 (D.Haw.2001); *see also Sellers v. School Board of City of Manassas,* *Va.,* 141 F.3d 524, 529 (4th Cir.1998) (holding that "either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of handicapped children."). Here, Plaintiffs have not alleged discrimination, intentional or otherwise.

contains any cross-reference or other indication that 34 C.F.R. § 300.403(C) applies in the Section 504 context.

Similarly, the State of Hawaii, DOE's regulations implementing the IDEA provide for reimbursement for private school placement under certain circumstances. *See* HAR § 8–56–51(a) & (c) (stating, in pertinent part, "This chapter does not require the department to pay for the cost of education, including special education and related services, of a student with a disability at a private school or facility if the department made a free appropriate public education available to the student and the parent elected to place the student in a private school or facility" but also providing that "[i]f the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private preschool, elementary, or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior to that enrollment and that the private placement is appropriate.").

However, the State of Hawaii DOE's regulations implementing Section 504 of the Rehabilitation Act do not provide for reimbursement for private school placements. *See* HAR § 8–53–21(b), implementing Section 504 (stating in pertinent part, like HAR § 8–56–51(a), which implements the IDEA, "This chapter does not require the department to pay for the cost of education, including regular education or special education and related aids and services, of a student with a disability at a private school or facility if the department

made a free appropriate public education available to the student and the parent elected to place the student in a private school" but, unlike HAR § 8–56–51(c), which implements the IDEA, not requiring FAPE to be provided in a timely manner and not authorizing a court or hearing officer to require the DOE to provide reimbursement for private school placement). Moreover, the federal and Hawaii IDEA reimbursement regulations only apply where the student previously received special education; whereas HAR § 8–53–21(b), implementing Section 504, has no such requirement.

Because neither the federal regulations nor Hawaii's regulations implementing the IDEA and Section 504 indicate that reimbursement is available under Section 504, the Court finds that reimbursement for private school placement as provided in 34 C.F.R. § 300.403(C) is not available in a claim brought under Section 504 of the Rehabilitation Act.[8] In any event, 34 C.F.R. § 300.403(C) simply provides that "a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made FAPE available to the child in a timely manner prior" to the disabled child's enrollment in private school. *See* 34 C.F.R. § 300.403(C). At the December 14, 2005 hearing in this case, Plaintiffs' counsel stated that Plaintiffs are simply seeking redress for the DOE's alleged failure to provide a timely Section 504 determination and are not challenging the DOE's findings that Joshua is ineligible for services under the IDEA and Section 504. Since even Plaintiffs do not suggest that Joshua is entitled to services under either the IDEA or Section 504, and since the

---

**8.** The Court notes that Plaintiffs' Supplemental Brief does not provide any support for their argument regarding the applicability of

34 C.F.R. § 300.403(c) to actions brought pursuant to Section 504 of the Rehabilitation Act.

Court found above that Plaintiffs have failed to establish eligibility under Section 504, it does not appear that Defendants failed to make FAPE available.[9]

## IV. *Scope of Stipulation*

■ Plaintiffs' Supplemental Brief states that "Defendant has already agreed to provide reimbursement to Plaintiffs under the Provision known as the 'Stay Put' clause of the IDEA. This was an issue brought before the Magistrate in this matter. Defendant stated that no Motion would be needed and agreed to reimburse Plaintiffs for the costs of funding students [sic] Assets School placement during the pendency of their claim at the Administrative Hearing and this instant appeal."

The Court has reviewed the record of the August 5, 2005 status conference, before United States Magistrate Judge Leslie E. Kobayashi, regarding the parties' stipulation as to the stay put provision in this case and it is unclear to the Court the scope of that stipulation. The stipulation appears to have covered only those expenses related to the 2004–2005 school year. Indeed, in the status conference before Magistrate Kobayashi, Plaintiffs agreed to submit documentation of the expenses, for which they were seeking reimbursement, by August 22, 2005. However, reference was also made to reimbursement for expenses incurred through the pendency of the instant litigation. It seems that if the later were correct, Plaintiffs would simply be suing for enforcement of the stipulation and not pursuing the various arguments they have put before the Court.

## CONCLUSION

The Court DENIES the relief requested by Plaintiffs for the reasons above and because they have not asserted any claims based on the DOE's IDEA procedures, challenged the Hearings Officer's determination that Joshua was ineligible for benefits under the IDEA, or established a cause of action under Section 504 of the Rehabilitation Act.

IT IS SO ORDERED.

---

**9.** The Court also notes that Joshua's parents were given the opportunity to participate in the October 13, 2004 Section 504 meeting, Joshua's parents were contacted regarding the meeting and were presented with possible alternative dates, Plaintiff Janet G. indicated that she was not available on those dates but failed to suggest alternative dates, Plaintiffs received advanced written notice of the scheduled hearing, and Joshua's father could have attended but did not attend the meeting. In any event, as discussed above, the regulations implementing Section 504 do not require reimbursement for private school placements.